**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RYAN O'DELL,<br><br>Plaintiff,<br><br>v.<br><br>COWEN INC., JEFFREY M. SOLOMON, BRETT BARTH, KATHERINE E. DIETZE, GREGG A. GONSALVES, LORENCE H. KIM M.D., STEVEN KOTLER, LAWRENCE E. LEIBOWITZ, MARGARET L. POSTER, and DOUGLAS A. REDIKER,<br><br>Defendants. | Civil Action No. 1:22-cv-08297<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Cowen Inc. ("Cowen" or the "Company") and the members of Cowen's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Cowen by affiliates of The Toronto-Dominion Bank, a Canadian chartered bank ("TD").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on September 27, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Crimson Holdings Acquisition Co. ("Merger Sub"), a wholly-owned subsidiary of TD, will merge with and into Cowen with Cowen surviving as a wholly-owned subsidiary of TD (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on August 1, 2022 (the "Merger Agreement"), each Cowen stockholder will receive $39.00 in cash (the "Merger Consideration") for each Cowen share owned.

3. As discussed below, Defendants have asked Cowen's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Ardea Partners LP ("Ardea") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Cowen's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, an owner of Cowen stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Jeffrey M. Solomon has served as a member of the Board since 2011 and is the Company's Chief Executive Officer and Chairman of the Board.

11. Individual Defendant Brett Barth has served as a member of the Board since 2018.

12. Individual Defendant Katherine E. Dietze has served as a member of the Board since 2011.

13. Individual Defendant Gregg A. Gonsalves has served as a member of the Board since 2020.

14. Individual Defendant Lorence H. Kim M.D. has served as a member of the Board since February 2022.

15. Individual Defendant Steven Kotler has served as a member of the Board since 2010.

16. Individual Defendant Lawrence E. Leibowitz has served as a member of the Board since 2018.

17. Individual Defendant Margaret L. Poster has served as a member of the Board since 2019.

18. Individual Defendant Douglas A. Rediker has served as a member of the Board since 2015.

19. Defendant Cowen is a Delaware corporation and maintains its principal offices at 599 Lexington Avenue, New York, New York 10022. The Company's stock trades on the NASDAQ Global Select Market under the symbol "COWN."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

22. Cowen, together with its subsidiaries, provides investment banking, research, sales and trading, prime brokerage, global clearing, securities financing, commission management, and investment management services in the United States and internationally. It operates in two segments, Operating Company (Op Co) and Asset Company (Asset Co). The Company offers public and private capital raising, and strategic advisory services for public and private companies. It also trades common stocks, listed options, equity-linked securities, and other financial instruments on behalf of institutional investor clients. In addition, the Company offers investment

products and solutions in the liquidity spectrum to institutional and private clients, as well as provides investment research services. Further, it is involved in private investment, private real estate investment, and other legacy investment activities. The Company was founded in 1918 and is headquartered in New York, New York.

23. On August 2, 2022, the Company and TD jointly announced the Proposed Transaction:

> TORONTO and NEW YORK, Aug. 2, 2022 /PRNewswire/ – TD Bank Group ("TD") (TSX: TD) and (NYSE: TD) and Cowen Inc. ("Cowen") (NASDAQ: COWN) today announced a definitive agreement for TD to acquire Cowen in an all-cash transaction valued at US$1.3 billion, or US$39 for each share of Cowen common stock. Through this transaction, TD Securities will accelerate its long-term growth strategy in the United States by acquiring a high-quality and rapidly growing investment bank with outstanding talent and highly complementary products and services.
>
> "Cowen is a leading independent dealer with a premier U.S. equities business and a strong, diversified investment bank that, when combined with TD Securities, will allow us to accelerate our strategic U.S. growth plans," said Bharat Masrani, Group President and CEO, TD Bank Group. "Most importantly, the acquisition will provide new capabilities and increased depth in key business lines to meet our clients' needs and will allow us to leverage our combined expertise, talent, and integrated offerings across a much larger client base."
>
> With this acquisition, TD Securities will benefit from the addition of Cowen's 1,700 talented colleagues and its exceptional leadership team. Once the transaction closes, Jeffrey Solomon, Chair & CEO of Cowen, will join the senior leadership of TD Securities, reporting to Riaz Ahmed, President and CEO, TD Securities and Group Head, Wholesale Banking, TD Bank Group. To leverage the strength of Cowen's brand, post-closing, parts of the combined business will be known as TD Cowen, a division of TD Securities, and will be headed by Mr. Solomon.

"At Cowen our success comes from striving to outperform in all we do by exceeding expectations and providing innovative solutions to, and partnering with, our clients. Taking this step will make us even stronger and more effective in serving their growing needs," said Mr. Solomon. "The strategic decisions and focused investments that we have made over the last few years have positioned Cowen for this exciting next chapter of our growth. I look forward to having our exceptional talent and valued clients join the TD family. We plan to do great things together because we are aligned with our cultural values of vision, empathy, sustainability, and tenacious teamwork."

"Together, we will have more than 6,500 professionals in 40 cities across the globe, extending our reach into new industry coverage areas and building even deeper, long-term client relationships," added Mr. Ahmed. "I look forward to welcoming Jeff and his team to TD Securities and to the fantastic opportunities for growth we will create together."

**TD Securities and Cowen – A Leading Full-Service Investment Bank**

The combined firms' pro-forma global revenues will increase by more than a third to approximately C$6.8 billion[1] with added advisory, capital markets, equity execution and industry-leading research capabilities and broadened expertise in key growth sectors. Following the closing of the transaction, TD Securities' existing depth and breadth in global market research capabilities will benefit from Cowen's complementary and highly diverse equity research franchise, which is positioned among the top 10 research platforms in the U.S. by both stocks under coverage and number of publishing analysts[2] and includes considerable expertise in Environmental, Social and Governance research. Furthermore, TD Securities' balance sheet and capital markets expertise are expected to bring immediate benefits to Cowen's existing client base.

**Transaction Highlights**

The transaction is expected to be modestly accretive to TD's 2023E adjusted EPS on a fully-synergized basis[3] and generate approximately 14% adjusted return on invested capital on a fully-synergized run rate basis.[4] The purchase price represents a 1.7 times multiple of Cowen's tangible book value as of March 31, 2022 and a 8.1 times multiple of Cowen's 2023E

> earnings.[5] TD expects to achieve US$300-350 million in revenue synergies by year three. TD expects to incur total pre-tax integration and retention costs of approximately US$450 million over three years.
>
> The transaction, which has been approved by the boards of directors of TD and Cowen, is expected to close in the first calendar quarter of 2023, and is subject to customary closing conditions, including approvals from Cowen's stockholders and certain U.S., Canadian, and foreign regulatory authorities, including the Office of the Superintendent of Financial Institutions (OSFI), the Financial Industry Regulatory Authority (FINRA), and under the Hart-Scott-Rodino (HSR) Act.
>
> To provide the capital required for the transaction, TD has sold 28.4 million non-voting common shares[6] of The Charles Schwab Corporation ("Schwab") for proceeds of approximately US$1.9 billion, reducing TD's ownership interest from approximately 13.4% to 12.0%. When combined with this share sale, the acquisition of Cowen is expected to be neutral to TD's Common Equity Tier 1 ratio which is expected to be comfortably above 11% at closing, pro forma for the closing of TD's acquisition of First Horizon Corporation.[7]
>
> TD's strategy with respect to its investment in Schwab has not changed and it has no current intention to divest additional shares.
>
> **Advisors**
>
> Perella Weinberg Partners LP served as financial advisor, and Simpson Thacher & Bartlett LLP and Torys LLP served as legal advisors to TD. Ardea Partners and Perkins Advisors LLC served as financial advisors, and Cravath, Swaine & Moore LLP served as legal advisor to Cowen.

* * *

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Cowen's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B. The Materially Incomplete and Misleading Proxy Statement**

25. On September 27, 2022, Cowen filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26. The Proxy Statement fails to provide material information concerning financial projections by Cowen management and relied upon by Ardea in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Ardea to aid them in forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Cowen management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Unlevered Free Cash Flow, Economic Operating Income, and Economic Operating Income per Share, but fails to provide line items used to calculate the metrics or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated Apr. 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31. With respect to Ardea's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values for Cowen; (ii) the inputs and assumptions underlying the use of the illustrative terminal multiples ranging from 4.0x to 6.0x; (iii) the inputs and assumptions underlying the use of the illustrative discount rates of 10.5% to 11.5%; (iv) the amount of Cowen's net debt as of March 31, 2022; and (v) the number of fully diluted outstanding shares of Cowen.

32. With respect to Ardea's *Illustrative Present Value of Future Stock Price and Dividends Analysis*, the Proxy Statement fails to disclose: (i) the basis for applying multiples ranging from 4.0x to 6.0x to the Company's weighted 1-year forward projected EOI/Share as of each of December 31, 2022, 2023, 2024 and 2025, respectively; and (ii) the inputs and assumptions underlying the discount rate of 12.1%.

33. With respect to Ardea's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

34. With respect to Ardea's *Historical Premia Analysis*, the Proxy Statement fails to disclose: (i) the transactions reviewed and analyzed by Ardea; and (ii) the premia paid in those selected transactions.

35. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed

to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Cowen within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Cowen, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Cowen, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Cowen, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 28, 2022

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: */s/ Benjamin Y. Kaufman*
Benjamin Y. Kaufman
Rourke C. Donahue
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Fax: (212) 686-0114
Email: kaufman@whafh.com
donahue@whafh.com

*Attorneys for Plaintiff*